IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KENNETH WAYNE ELLER,<br><br>　　　　Defendant._____/ | No. CR-06-0735-NJV<br><br>**ORDER GRANTING UNITED STATES' AND DEFENDANT'S MOTIONS IN LIMINE TO PRECLUDE DEFENSE OF NECESSITY OR THE "GOOD SAMARITAN" DEFENSE AND EVIDENCE REGARDING THE DEATH OF THE SEAL PUP AT TRIAL** |

In this action for violation of a federal statute for knowingly taking a marine mammal brought by the plaintiff United States of America "the government" against defendant Kenneth Wayne Eller ("Eller"), the government has filed a motion in limine precluding the defendant from raising the defense of necessity and the "Good Samaritan" defense at trial. Defendant has filed a motion in limine to exclude evidence regarding the death of the seal pup at issue in this case. For the reasons discussed below, both Plaintiff's and Defendant's motions are granted.

**I.   BACKGROUND**

Plaintiff alleges that Defendant Eller knowingly took a marine mammal, a harbor seal pup (Phoca Vitulina), in waters or on lands under the jurisdiction of the United States, in violation of 16 U.S.C. § 1372(a)(2), a Class A Misdemeanor.  (U.S. Trial Memo. 1:24-27.)  Eller contends that at all times he was acting to safeguard the seal pup in the taking, and therefore is allowed to present the defense of necessity, or in the alternative, the statutorily delineated "Good Samaritan" defense. (Eller's Opposition to the Government's Motion in Limine to Preclude Defense of Necessity or the "Good Samaritan" Defense at Trial 2:1-4; 3:18-19) (thereafter "Eller's Opp. to Mot. in Limine").

On March 26, 2006, Defendant Eller, Shawn Wolfe, and another individual found a harbor

seal pup on Centerville Beach near the mouth of the Eel River in Humboldt County.  (U.S. Trial Memo. 3:10-12.)  This seal pup was alive but among other seal pups that were all dead.  (Eller's Opp. to Mot. in Limine 1:24.)  Eller picked up the remaining live seal pup from the beach and put it in his ATV, then transferred it to the Wolfe's truck.  (U.S. Trial Memo. 3:13-14.)

Eller and the other two then drove from the beach to the Bear River Casino in Loleta, California.  (U.S. Trial Memo. 3:15-16.)  According to the surveillance footage from the casino, they then showed the seal pup off to several people, inviting people to approach and pet the seal pup for around twenty minutes.  (U.S. Trial Memo. 3:16-19.)  Witnesses at the casino heard Eller both say he wanted to help the seal pup and that he wanted to keep it as a pet.  (U.S. Trial Memo. 3:20-22.)

Eller and the other two left the casino and drove around Eureka, stopping at several other locations.  (U.S. Trial Memo. 3:26-27.)  Eller then called his girlfriend Shelli Camilli to say that he was bringing the seal pup over to her house in McKinleyville, California.  (U.S. Trial Memo. 3:28, 4:1.)  Eller brought the pup over to her house and showed it to Bill Camilli and Bill's son, but then left pursuant to Bill's wishes and Shelli's instruction by way of a note on the door.  (U.S. Trial Memo. 4:1-6.)

Eller then left Camilli's house with the seal pup and spent the night at a friend's house, returning the next morning, March 27, to ask Camilli to call someone to pick up the seal pup.  (U.S. Trial Memo. 4:7-9.)  Shelli Camilli called the Marine Mammal Center and arranged for a volunteer to pick up the seal pup.  (U.S. Trial Memo. 4:9-10.)  The seal pup was then taken to the Marine Mammal Center where it was treated by Lanni Hall, the executive director of the Northcoast Marine Mammal Center in Crescent City, California.  (U.S. Trial Memo. 4:11-13.)

The government filed a criminal action under 16 U.S.C. § 1372(a)(2) which prohibits any person from taking any marine mammal in waters or on lands under the jurisdiction of the United States, and 16 U.S.C. § 1375(b): where an action occurs knowingly, criminal liability attaches. Defendant denies the charge, and raises two defenses: necessity and "Good Samaritan."  Plaintiff filed a motion in limine to preclude use of these defenses at trial as well evidence of defendant's alleged intent to aid the seal pup by taking. Defendant filed a motion in limine to preclude the government from introducing the subsequent death of the seal pup.

## II.  DISCUSSION

Though there is no express authority in either the Federal Rules of Criminal Procedure (See, FRCrP 12) or the Federal Rules of Evidence, motions in limine are well recognized in both practice and case law.  See Ohler v. United States, 529 U.S. 753, 758 (2000); United States v. Cook, 608 F.2d 1175, 1186 (4th Cir.1979) (the matter should be left to the court's discretion).  The authority for these motions can also be implied from "the court's inherent power to manage the course of trials." Luce v. United States, 469 U.S. 38, 41 n.4 (1984).

Plaintiff argues that the defenses are inapplicable because as a matter of law the crime charged was completed once Defendant took the seal pup from the beach, so the evidence of intent to aid the pup is not relevant.  "Evidence which is not relevant is not admissible." Fed. R. Evid.. 402.  Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Furthermore, Plaintiff contends that the "Good Samaritan" exemption does not apply because it does not fulfill the elements of the exemption.

Defendant argues that the defense of necessity and the "Good Samaritan" defense are both available to him because the statute does not explicitly deny the former, and that there is sufficient evidence as to all elements of both defenses.  As discussed below, the Court finds Plaintiff's argument persuasive.

### A. Defense of necessity

Eller's first defense is the defense of necessity.  "As a matter of law, a defendant must establish the existence of four elements to be entitled to a necessity defense: (1) that he was faced with a choice of evils and chose the lesser evil; (2) that he acted to prevent imminent harm; (3) that he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and (4) that there were not other legal alternatives to violating the law." United States v. Aguilar, 883 F.2d 662, 693 (9th Cir. 1989) (citing United States v. Dorrell, 758 F.2d 427, 430-431 (9th Cir. 1985))

//

//

### 1. The defense of necessity is unavailable when Congress has made a determination of values

The United States Supreme Court has never held necessity to be a viable justification for the violation of a federal statute, therefore, this court must give great deference to Congressional intent. United States v. Oakland Cannabis Buyers' Cooperative, 532 U.S. 483, 491 n.4 (2001). Although the United States Supreme Court has yet to reach the question of whether federal courts ever have authority to recognize a necessity defense not provided by statute, "the defense cannot succeed when the legislature itself has made a determination of values." Id. at 491 (citing Wayne R. LaFave & Austin W. Scott, Substantive Criminal Law § 5.4. (2d ed. 1986)). In the above case concerning the medical necessity of marijuana, the Court explicitly rejects the defendant's implication that elimination of the necessity defense requires an explicit statement by Congress in the federal statute. Id. at 491 n.4. As a matter of policy, indeed, the Court has stated that the question of whether an exemption should be created is one for the judgment of the legislature and not for the inference of the judiciary. United States v. Rutherford, 442 U.S. 544, 559 (1979). In other words, courts are to give the utmost deference to Congress when determining if the necessity defense is applicable to a federal statute.

Eller's claim for defense of necessity is unavailable under the Marine Mammal Protection Act (MMPA) as delineated in 16 U.S.C. § 1361 et seq. The structure, language, and purpose of the Act support the conclusion that Congress has made a determination of values in regards to marine mammals and takings. The legislature laid out the entire section 1371 for exceptions and exemptions in limited circumstances under which taking and importing marine mammals is allowed. The plain language of the statute states the purpose "to encourage the . . . conservation of, all marine mammals." 16 U.S.C. § 1361(4). Taking a seal pup is not in line with this purpose.

Eller argues that if Congress had intended to preclude the necessity defense it would have specifically addressed and noted the intent to preclude it. (Eller's Opp. to Mot. in Limine 3:13-14.) The Court finds this reasoning unpersuasive. As explained supra, if the legislature itself made a determination of values, then the Court should defer to the legislature. Since there is no mention of the necessity defense, the Court should assume that it does not apply as in Oakland Cannabis, supra.

4

1    The legislative intent of the statute is manifest in that it reflects a determination that marine
2 mammals are not to be disturbed for conservation purposes except for the specific delineated
3 exceptions given in various sections of the Act.  Given that the statute spells out permitted exceptions
4 and that the Act reflects the legislative determination that marine mammals should not be taken, this
5 Court finds the defense of necessity to be unavailable.

### 2. Even if the defense of necessity were available, the defendant does not fulfill his burden in offering sufficient evidence to establish all the elements of a necessity defense

9    A defendant in a criminal trial has the right to have a jury resolve factual issues in dispute.
10 United States v. Contento-Pachon, 723 F.2d 691, 695 n.2 (9th Cir. 1984).  When the defendant's
11 evidence is insufficient as a matter of law to establish all the elements of the defense, however, the
12 district judge must grant the motion in limine to preclude evidence of necessity.  Aguilar, 883 F.2d at
13 693; Dorrell, 427 F.2d at 430.

14    Even assuming arguendo that the MMPA is subject to the additional implied exception of the
15 defense of necessity, defendant Eller must present evidence that is sufficient as a matter of law to
16 establish all four elements of the Dorrell test.  See II.A., supra.  Eller fails to establish element four of
17 the Dorrell test for the defense of necessity.

18    Element four states that it is necessary that there were no legal alternatives to violating the
19 law.  Eller argues that there were only two choices: ignore the seal pup and let it die like the others or
20 take the animal to get it help.  Common sense dictates, however, that he clearly had another legal
21 alternative: call the Marine Mammal Rescue Center (MMRC) directly for help in lieu of towing the
22 animal around and only  resorting to obtaining help from the MMRC the next day.

23    As Eller's evidence is insufficient to fulfill element four of the defense of necessity, the Court
24 finds that the defense of necessity, even if available, should not apply and the evidence should be
25 precluded from the jury.

### B. "Good Samaritan" exemption

27    Eller also claims, in the alternative, that he is entitled to a defense pursuant to the "Good
28 Samaritan" provisions of 16 U.S.C. § 1371(d).  Under this provision, it shall not be a violation to take

**United States District Court**
For the Northern District of California

1   a marine mammal if "(1) such taking is imminently necessary to avoid serious injury, additional
2   injury, or death to a marine mammal <u>entangled in fishing gear or debris</u>; (2) reasonable care is taken
3   to ensure the safe release of the marine mammal, taking into consideration the equipment, expertise,
4   and conditions at hand; (3) reasonable care is exercised to prevent any further injury to the marine
5   mammal; and (4) such taking is reported to the Secretary within 48 hours." § 1371(d) (emphasis
6   added by the U.S.).

7       The government contends that Defendant does not fall under the Good Samaritan takings
8   exemption because the seal pup was not entangled in debris and the Secretary of Commerce was not
9   notified within 48 hours. Eller responds by asserting that the pup was "found in amongst the debris
10  on the river bar and defendant contacted the Secretary of Commerce's agent – the Marine Mammal
11  Rescue Center, which is apparently part of the Northcoast Marine Mammal Center – within 48 hours
12  of taking the pup." (Eller's Opp. to Mot. in Limine 3:20-23.)

13      The analysis of the statute should begin with the statute itself. "Absent a clearly expressed
14  legislative intention to the contrary, that language must ordinarily be regarded as conclusive."
15  <u>Consumer Prod. Safety Comm'n v. GTE Sylvania</u>, 447 U.S. 102, 108 (1980). Thus, the Court looks
16  at the plain language of the statute to determine whether it applies. While the evidence may be
17  sufficient regarding point four to raise the Good Samaritan exemption, a mere assertion that the seal
18  pup was "in amongst the debris" is insufficient to fulfill the element requiring the marine mammal to
19  be "entangled in fishing gear or debris."

20      "In amongst the debris" is not the equivalent of being "entangled in . . . debris" as the
21  uncontested facts demonstrate that the seal pup was found lying on the beach, not entangled by
22  fishing gear or debris. The focus is on the <u>entanglement</u> of the marine mammal in something, and
23  this is not true of the current case. Perhaps there was debris lying around on the beach, but the seal
24  pup was not entangled or otherwise encumbered by it. The plain language of the statute is clearly
25  directed towards fishermen not being penalized for trying to help a marine mammal out of their gear
26  or if it was somehow hurt on the ocean.

27      There is no legislative intent that affirms the defendant's position. Rather, legislative history
28  shows that the MMPA "notes the adverse impact of human activities on some marine mammals

populations." S. Rep. No. 103-220, at 1 (1994), reprinted in 1994 U.S.C.C.A.N. 518, 519. Accordingly, the Court precludes the "Good Samaritan" defense at trial.

### C. Preclusion of evidence of defendant's intent

Plaintiff argues to preclude defendant from introducing evidence of his alleged intent to aid the seal pup by taking it from the beach because the taking occurred regardless of his intentions, and it was at that point in time during which the criminal act occurred. Evidence of intent to aid the seal pup is only relevant if the defenses of necessity and "Good Samaritan" are allowed. Since they are denied, the evidence of Eller's alleged intent to aid the seal pup by taking it from the beach is also denied.

### D. Preclusion of evidence of the subsequent death of the seal pup

Since the court has granted the government's motions in limine to preclude the defense of necessity or the "Good Samaritan" defense at trial, evidence of the subsequent death of the seal pup is not relevant to the charges before the court.

. "Evidence which is not relevant is not admissible." Fed. R. Evid.. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

## III. CONCLUSION

For the reasons set forth above, the government's motions in limine to preclude the defense of necessity or the "Good Samaritan" defense at trial is **GRANTED**. Defendant's motion in limine to preclude evidence of the death of the seal pup is **GRANTED**.

**IT IS SO ORDERED.**

Dated: May 25, 2007

NANDOR J. VADAS
United States Magistrate Judge